IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNY L. WILSON, A82195, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CARISSA LUKING, | ) |
| YOKO SAVINO, | ) |
| A. FITZGERALD, | ) |
| P. WARD, | ) |
| LPN WELTY, | ) |
| DR. DEANNA BROOKHART, | ) |
| WEXFORD HEALTH SOURCES, CO., | ) |
| J. MARTIN, | )  Case No. 23-cv-3186-DWD |
| LIEUTENANT NEIKIRK, | ) |
| JANE DOE 1, | ) |
| JOHN DOE 1, | ) |
| RN FRY, | ) |
| LORI CUNNINGHAM, | ) |
| PATRICK A. RIGGS, | ) |
| JOHN DOE 2, | ) |
| JOHN DOE 3, | ) |
| D. YARNELL, | ) |
| JOHN DOE 4, | ) |
| C/O BO, | ) |
| C/O GOODCHILD, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Johnny Wilson, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Lawrence Correctional Center (Lawrence). (Doc. 1).

Plaintiff alleges that the Defendants denied him adequate medical care for a foot injury/infection, and that ultimately he lost all his toes to amputation due to the lack of care.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff's complaint is a mixture of exhibits and short factual statements. He also included proposed witness statements from correctional staff, as well as fellow inmates. For ease of comprehension, the Court has organized this factual section into chronological order.

On August 21, 2021, Plaintiff alleges that Dr. Yoko Savino cut his left toe with a dirty nail trimmer. He alleges Defendant Fitzgerald was present during the incident, and both Savino and Fitzgerald knew that the cut was a problem. Plaintiff alleges his toes or foot became infected because of the cut. In September of 2021, Plaintiff asked Lieutenant Neikirk for medical assistance while in obvious distress, but Neikirk did not render aid. (Doc. 1 at 55). At least part of the interaction with Neikirk occurred at the medical unit

in the presence of a nurse. (*Id.*). On November 7, 2021, Plaintiff spoke with Defendant Goodchild (a correctional officer) while waiting in the medical treatment line. (Doc. 1 at 56). Goodchild knew Plaintiff was having problems with his foot, and Plaintiff asked him to inform the nurse of the problems, but Goodchild declined and insisted only a sergeant or lieutenant could report the issue.

On December 15, 2021, Plaintiff saw Defendant Carissa Luking concerning his toes and foot. She repeatedly referred him to doctors, but she never personally provided care, and she did not ensure that he received antibiotics or other treatment for his gangrene infection. He saw Luking repeatedly from December of 2021 until March of 2022 when she sent him to the emergency room for treatment. (Doc. 1 at 38).

On December 17, 2021, Plaintiff asked Defendant Patrick Riggs, a sergeant, for medical attention for his foot. (Doc. 1 at 75). Riggs knew that Plaintiff had been suffering from a gangrene infection for months, and Plaintiff informed Riggs he was in excruciating pain, but Riggs smirked and denied care. On the same date, Plaintiff corresponded with Defendant Deanna Brookhart (the Warden) about his need for care. (Doc. 1 at 71). He does not explain if he corresponded via grievance, letter, or some other fashion. He insists that Brookhart should have investigated the issue and secured care for him because his infection was getting worse, but two weeks passed, and he never heard back from her.

On December 22, 2021, Plaintiff saw Defendant RN Fry and he asked her for help with the blood and puss that was coming out of his toes and foot. (Doc. 1 at 70). Despite knowing of his medical condition, Fry refused aid.

Plaintiff alleges that in December of 2021 and January of 2022, Defendant Fitzgerald refused care on multiple occasions. (Doc. 1 at 36). Plaintiff also alleges that on January 20, 2022, Defendant J. Martin (a correctional officer) refused to contact a sergeant or the medical staff despite knowing that Plaintiff had an infection and was in severe pain. (Doc. 1 at 73).

On January 28, 2022, Plaintiff saw a male doctor at Carle Memorial Hospital in the emergency room concerning his foot. (Doc. 1 at 68). He believes this John Doe 1 is Dr. Ziad Marsi. He alleges Dr. Marsi stated that there was nothing he could do to assist Plaintiff, and he discharged him from the hospital.

On February 6, 2022, Plaintiff saw a Jane Doe 1 female doctor at Carle Memorial that he believes was Dr. Alyssa Suzanne Lewandowski. (Doc. 1 at 63). He alleges that Dr. Lewandowski told him he might have circulatory problems in his leg, but she otherwise refused assistance.

On February 9, 2022, Plaintiff saw a John Doe 2 male doctor at Carle vascular center. He believes this John Doe was Dr. Brian Beeman. (Doc. 1 at 55). Plaintiff alleges that after a failed attempt to take his pulse, Dr. Beeman refused care and directed the officers to take him back to the prison.

On February 13, 2022, and at other times, Plaintiff alleges that Defendant LPN Welty refused him care despite knowing he had a serious injury. (Doc. 1 at 72).

On February 17, 2022, Plaintiff asked Defendant D. Yarnell (a sergeant) for medical attention for his obvious infection and distress. Yarnell refused to get Plaintiff a crisis

team or medical care. He stated that he would get pain medication from the medical unit, but he never returned. (Doc. 1 at 54).

On February 20, 2022, Plaintiff alleges that Defendant J. Martin (a correctional officer) refused to get him care a second time despite knowing of his condition. (Doc. 1 at 73).

Finally, on March 1, 2022, a non-party sergeant (Sgt. Bridwell) looked at Plaintiff's infected and black foot, and he sent him to the medical unit. (Doc. 1 at 52). Defendants Fitzgerald and Luking were present in the medical unit. They tried to send Plaintiff back to the housing unit two or three times before Bridwell emphatically insisted that they must take action. When they finally looked at Plaintiff's foot they immediately sent him to the hospital by ambulance. On March 7, 2022, Plaintiff had all five toes amputated.

Plaintiff alleges at the outset of the complaint that Wexford Health Sources is a licensed medical contractor for the IDOC, who employed Dr. Savino. (Doc. 1 at 32). He alleges Wexford was responsible for providing care at Lawrence.

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Count 1:** **Eighth Amendment deliberate indifference claim against the medical providers (Carissa Luking, Yoko Savino, A. Fitzgerald, LPN Welty, RN Fry) who injured Plaintiff's foot or refused to provide any care for his infection from August of 2021 through March of 2022.**
>
> **Count 2:** **Eighth Amendment deliberate indifference claim against the non-medical prison staff (Deanna Brookhart, J. Martin, Lt. Neikirk, Patrick Riggs, D. Yarnell, C/O Goodchild) for their involvement in denying care for Plaintiff's ongoing infection from September of 2021 thru March of 2022;**

> **Count 3:** Eighth Amendment deliberate indifference claim against the medical providers (Alyssa Suzanne Lewandowski, Dr. Ziad Marsi, and Dr. Brian Beeman) at Carle Memorial Hospital and Carle Vascular Center for failing to treat Plaintiff's infection;
>
> **Count 4:** *Monell* claim against Wexford Health Sources Co. for failing to provide care for Plaintiff's foot.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissals

Plaintiff named Defendants P. Ward, Lori Cunningham, John Doe 3 (young male doctor at Carle Vascular), John Doe 4 (director of nurses), and C/O Bo, as defendants in this action, but there were not clear and individualized factual allegations against these individuals in the statement of claim, so these individuals are dismissed for failure to state a claim. *See e.g., Black v. Lane*, 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994) (a claim against a defendant is insufficient if the defendant is named, but there are no factual allegations describing his or her personal involvement).

## Analysis

### Claim 1

Plaintiff alleges that on various occasions, Defendants Carissa Luking, Yoko Savino, A. Fitzgerald, LPN Welty, and RN Fry, saw him with varying degrees of a gangrene infection, but they refused treatment or failed to provide any treatment that was effective for his left foot. As a result of the lack of care, he suffered in severe pain from August of 2021 through March of 2022, and ultimately all five of his toes were amputated.

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019). If an inmate alleges a delay in treatment, he must present verifying medical evidence that the delay, and not the medical condition itself, caused some harm. *Jackson v. Pollion*, 733 F.3d 786, 790 (7th

Cir. 2013). He must also show it was the defendant's actions or inaction that caused the delay in treatment. *Walker*, 940 F.3d at 964.

Here, Plaintiff's allegations are sufficient to proceed beyond initial review against Defendants Luking, Savino, Fitzgerald, Welty and Fry. He alleges that they were aware that he was in pain and that he had a festering infection, but they failed to act. As a result of the lack of care or the delays in care, his toes were amputated. These allegations are sufficient to proceed beyond initial review.

## Claim 2

Plaintiff also alleges that non-medical officials participated in denying or delaying his access to care for his gangrene infection. Non-medical prison officials are generally allowed to defer to treating professionals, unless such deference would amount to ignoring an inmate's serious need. *See e.g., Berry*, 604 F.3d at 440-41 (the law encourages non-medical security and administrative personnel to defer to the professional medical judgments of physicians and nurses without fear of liability).

Plaintiff alleges that he corresponded with Warden Deanna Brookhart about his need for care and his worsening infection on December 17, 2022, but he received no response and no medical assistance. He does not specify if this communication took the form of a grievance, a letter, or some other interaction such as a conversation in the cellhouse. Generally, high-level prison administrators are not held liable under the Eighth Amendment solely on the basis that they might have received a single piece of correspondence about an inmate's need for assistance. *See, e.g., Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (a letter writing campaign to prison officials is not sufficient

to create personal liability for a § 1983 claim). However, if an inmate alleges that an administrator turned a blind eye to his plight, he may be able to state a claim. *See e.g., Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (an administrator cannot turn a blind eye to knowledge of an ongoing harm, and they cannot entirely shirk the duty to render aid). Here, Plaintiff's factual allegations do not rise to the level of suggesting that Brookhart, as the Warden, turned a blind eye to his plight. He does not explain the form of communication with Brookhart, and he suggests he waited just two weeks for a response but did not get one. Without more information, it is not plausible that Brookhart intentionally disregarded Plaintiff's peril. Claim 2 is insufficient as to Brookhart and will be dismissed.

Plaintiff also alleges that Defendants Lt. Neikirk and C/O Goodchild refused to alert nursing staff to his peril, but he alleges that at least part of his interactions with these two about care took place while he was already in the medical unit waiting for treatment. Non-medical prison officials may defer to treating medical professionals for the appropriate course of action, so Neikirk and Goodchild did not exhibit deliberate indifference when they refused additional aid while Plaintiff was in the medical unit. Claim 2 is insufficient as to Neikirk and Goodchild and is dismissed without prejudice.

By contrast, Plaintiff alleges that Defendants J. Martin, Patrick Riggs, and D. Yarnell all refused him care in the housing unit. He claims each defendant knew of his infection and it was obvious to a layperson that he was in distress, but they refused to contact other correctional staff or the medical unit, and they refused to go get him care

from the medical unit. At this preliminary juncture, these allegations are sufficient to proceed against Defendants J. Martin, Patrick Riggs, and D. Yarnell.

**Claim 3**

Plaintiff alleges Defendants Dr. Alyssa Suzanne Lewandowski (Jane Doe 1), Dr. Ziad Marsi (John Doe 1), and Dr. Brian Beeman (John Doe 2), saw him on three occasions in January and February of 2022 at Carle Memorial Hospital or Vascular Center, and they refused him care despite his serious and obvious infection. Plaintiff attached short excerpts from the visits with these providers. On January 28, 2022, he was seen by Dr. Ziad Marsi. (Doc. 1 at 67). The notes suggest that labs were taken, medications were provided, and he was referred to a vascular surgeon. Plaintiff alleges this was an emergency room visit, and that Dr. Marsi said there was nothing he could do for him.

On February 6, 2022, Plaintiff saw Lewandowski. (Doc. 1 at 65). He alleges that Lewandowski drew a picture of two legs and explained to him that he might have clogged veins, but she otherwise said she could not help him and directed that he be returned to the prison. (Doc. 1 at 63). He alleges she gave no pain medication, although the visit summary reflects a prescription for hydrocodone-acetaminophen. (Doc. 1 at 65).

On February 9, 2022, Plaintiff saw Dr. Brian Beeman. His chart from the prison indicates that it was a visit for a surgical consultation. (Doc. 1 at 62). Plaintiff alleges that Dr. Beeman tried but failed to take his pulse, and then he stood up, directed officers to take Plaintiff back to the prison, and refused any care. The visit summary notes give no details. (Doc. 1 at 60).

On March 7, 2022, Plaintiff's toes were amputated. (Doc. 1 at 82-83). He provided a picture, though it is difficult to make out what is depicted.

The Court will assume for purposes of initial review that Plaintiff saw these medical providers for a serious medical condition. It cannot, on the facts supplied, reasonably assess the adequacy of care rendered. Taking Plaintiff's allegations at face value, as the Court must on preliminary review, it appears that he alleges all three medical providers refused to provide care for a serious condition, which left him in pain, and which may have led to the need to amputate his toes. These allegations would be sufficient to proceed under the Eighth Amendment. However, an Eighth Amendment claim under § 1983 is only proper against a medical provider that is acting as a "state actor" when they provide treatment.

The viability of this claim will turn on inquiries that the Court cannot complete at the stage of initial review. First, the Court will need to determine, through a "functional inquiry" what the relationship is between the state and Defendants Dr. Marsi, Dr. Lewandowski, and Dr. Beeman. *See Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 797-98 (7th Cir. 2014) ("whether a medical provider is a state actor is a functional inquiry, focusing on the relationship between the state, the medical provider, and the prisoner.") This is true because § 1983 liability is only proper against those who are "state actors," and not all private doctors that provide care to inmates are considered "state actors." *See e.g. Manzanales v. Krishna*, 113 F.Supp.3d 972, 980-81 (N.D. Ill. June 30, 2015) (finding that the factual allegations in the complaint were not sufficient to determine if the private doctors were state actors for purposes of § 1983 at the motion to dismiss stage); *Rackemann*

*v. Robinson*, 2019 WL 4737194 at *2-3 (S.D. Ind. Sept. 27, 2019) (granting summary judgment in favor of a doctor because he was not a 'state actor' for purposes of § 1983 where he only occasionally saw patients from the prison at a local hospital, and where he was privately employed). The Complaint provides insufficient information to determine if Defendants Dr. Marsi, Dr. Lewandowski, or Dr. Beeman are or are not state actors, so construing the complaint broadly in Plaintiff's favor, he will be allowed to proceed against these Defendants at this stage.

### Claim 4

Plaintiff named Defendant Wexford Health Sources at the outset of the complaint, and he alleged that Wexford was responsible for staffing Lawrence and employed Dr. Savino. These allegations are insufficient to state a claim against Wexford because there is no *respondeat superior* liability under § 1983, so Wexford cannot be held liable solely on the basis of Dr. Savino's actions. *See, J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (there is no respondeat superior liability under § 1983). Plaintiff's other allegation, that Wexford is responsible for staffing Lawrence, is too threadbare to proceed. He does not suggest that staffing shortages actually caused his injury. Accordingly, Claim 4 against Wexford is dismissed as insufficiently pled.

### Motion for Recruitment of Counsel

Plaintiff has moved for recruited counsel (Doc. 3). In his motion he indicated that he has only a grade school education. He also accompanied his motion by a letter wherein he explains that he repeatedly sought medical care to no avail, and that he believes he has a meritorious claim. His Motion is accompanied by correspondence with

the University of Illinois Law Clinic, and with a solo practitioner. The solo practitioner, Attorney Joe Dusek, appears to have provided assistance to Plaintiff in preparing to file a case, though he has not assumed representation and it does not appear he drafted the complaint.

There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff has clearly attempted to retain his own counsel, but this is not the end of the inquiry. At this very early juncture, Plaintiff has done a sufficient job presenting his claims, and the next stages will involve the exchange of basic information. Based on the early status of this litigation, the Court will deny Plaintiff's motion without prejudice.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendants Carissa Luking, Yoko Savino, A. Fitzgerald, LPN Welty, and RN Fry; **Claim 2** survives against Defendants J. Martin, Patrick Riggs, and D. Yarnell; **Claim 3** survives against Defendants John Doe 1 (Dr. Ziad Marsi), Jane Doe 1 (Alyssa Suzanne Lewandowski) and John Doe 2 (Dr. Brian Beeman).

By contrast, **Claim 2** is **DISMISSED** as to Defendants Deanna Brookhart, Lt. Neikirk, and C/O Goodchild; and **Claim 4** is **DISMISSED** as to Wexford Health Sources,

Co..  Plaintiff has also failed to state any claim as to Defendants P. Ward, Lori Cunningham, C/O Bo, and John Does 3 and 4.  The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Deanna Brookhart, Lt. Neikirk, C/O Goodchild, Wexford Health Sources, Co., P. Ward, Lori Cunningham, C/O Bo, and John Does 3 and 4.

The Clerk is **DIRECTED** to **SUBSTITUTE** Defendant Dr. Ziad Marsi for John Doe 1, Dr. Alyssa Suzanne Lewandowski for Jane Doe 1, and Dr. Brian Beeman for John Doe 2.

The Clerk of Court is **DIRECTED** to prepare for Defendants: Carissa Luking, Yoko Savino, A. Fitzgerald, LPN Welty, RN Fry, J. Martin, Patrick Riggs, D. Yarnell, Dr. Ziad Marsi (Carle Richland Memorial Hospital, as identified for Defendant #11 on page 3 of the complaint), Dr. Alyssa Suzanne Lewandowski (Carle Richland Memorial Hospital, as identified for Defendant #10 on page 3 of the complaint), and Dr. Brian Beeman (Carle Effingham Vascular Surgery, as identified for Defendant #15 on page 4 of the complaint): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Counsel (Doc. 3) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: November 27, 2023

/s *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.