IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNY L. WILSON, A82195, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CARISSA LUKING, | ) |
| YOKO SAVINO, | ) |
| AUDRY FITZGERALD, | ) Case No. 23-cv-3186-DWD |
| TAMMY WELTY, | ) |
| JACKSON MARTIN, | ) |
| AMY FREY, | ) |
| PATRICK A. RIGGS, | ) |
| DONALD YARNELL, | ) |
| DR. ZIAD MARSI, | ) |
| DR. ALYSSA SUZANNE | ) |
| LEWANDOWSKI, and | ) |
| DR. BRIAN BEEMAN | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Johnny L. Wilson, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Lawrence Correctional Center (Lawrence). Plaintiff alleges that the Defendants violated his rights by failing to provide adequate care for a foot infection that ultimately led to the amputation of five toes. Defendants have filed three Motions for Summary Judgment (Docs. 50, 53, 56) on the exhaustion of administrative remedies, Plaintiff has responded (Docs. 60, 64, 65), and the Wexford Defendants replied (Doc. 62). For reasons explained herein, the Motions will be denied on paper and the matter will be set for a Pavey hearing. Defendants Yoko Savino,

Carissa Luking, and Patrick Riggs did not seek summary judgment on the issue of Plaintiff's exhaustion of administrative remedies, so the claims against these three defendants will proceed.

## BACKGROUND

Plaintiff signed his original complaint on May 23, 2023, (Doc. 1 at 80), however it was not transmitted to the Court via electronic scan until September 17, 2023, and it was docketed on September 21, 2023. (Doc. 1 at 1; Docket entry 1). Upon initial review of the complaint, Plaintiff was allowed to proceed on the following claims:

> Claim 1: Eighth Amendment deliberate indifference claim against the medical providers (Carissa Luking, Yoko Savino, A. Fitzgerald, LPN Welty, RN Frey) who injured Plaintiff's foot or refused to provide any care for his infection from August of 2021 through March of 2022;
>
> Claim 2: Eighth Amendment deliberate indifference claim against the non-medical prison staff (J. Martin, Patrick Riggs, and D. Yarnell) for their involvement in denying care for Plaintiff's ongoing infection from September of 2021 through March of 2022;
>
> Claim 3: Eighth Amendment deliberate indifference claim against the medical providers (Alyssa Suzanne Lewandowski, Dr. Ziad Marsi, and Dr. Brian Beeman) at Carle Memorial Hospital and Carle Vascular Center for failing to treat Plaintiff's infection.

(Doc. 11 at 5-6, 10). Other claims against additional defendants were dismissed as insufficiently pled. (*Id.* at 10-11).

There are three primary groups of defendants—those employed by Wexford Health Sources, Inc. (Luking, Savino, Fitzgerald, Welty and Frey); those employed by the

IDOC (Martin, Yarnell, and Riggs); and those employed at outside medical facilities (Lewandowski, Marsi, and Beeman).

The parties all identified similar, or the same grievance documentation concerning exhaustion. They primarily argue about documented grievances from February and March of 2022, and then two additional grievances that Plaintiff alleges he sent but that there is no official record of from October of 2021 and March of 2022.

### FINDINGS OF FACT

In a grievance that Plaintiff claims he drafted on October 30, 2021, he complains at length about problems with his foot that began on August 4, 2021, when Defendant Dr. Savino allegedly clipped his nail in the presence of Defendant Fitzgerald. (Doc. 1 at 24). He claims both Savino and Fitzgerald knew that the procedure did not go as planned, and they started him on medication. He claims Fitzgerald gave him medication on September 15, 2021, but the pain did not start until about October 30, 2021. He goes on to allege that on December 16, 2021, he asked Defendant Riggs to permit him to go to the healthcare unit for obvious problems with his foot, but Riggs refused. (*Id.* at 25). He further alleged Defendant Frey knew about his foot infection but refused to help. Plaintiff went on to describe problems through November and December of 2021 attempting to secure care. (*Id.*). On the alleged copy of this grievance that he submitted with his complaint, he stated, "this is a print, before I wrote the original copy so no error or mistakes would be made and to know what I wanted to write." (*Id.* at 24). In an affidavit attached to the complaint, he claimed he wrote the grievance on October 30, 2021, and never got a response to it. (Doc. 1 at 86). He alleges he believes he did not get a response

because the facility was trying to prevent him from exhausting his remedies.  Plaintiff alleges he mentioned this October 2021 grievance in subsequent grievances but got no traction.

In a grievance that Plaintiff dated February 14, 2022, he complained that on or around that date he was taken to Carle Medical Center in Champaign for assessment of his left foot, which had turned black.  He alleges, "I did not receive any assistance or help or relief from the pains I was in, and only told that I would be operated on, on March 18, 2022, and I was sent back to the prison with no help, same pains and suffering."  He further states,

> On or about October the third or fourth (21) I was seen by Dr. Savino who use some clippers and [scissors] to cut my toes on my left foot.  She never finish because she left the prison.  My foot start to swell.  Pains was coming that I never felt before and I start complaining and putting sick call slips in nothing happen and I was told that I was okay.  For the month of Dec. 21, Jan. 22, Feb. 22 until March 7, 2022 that I understood that I was not okay, when I was told that all 5 of my toes on my left foot had to be removed.
>
> I am trying to explain what happened and that no one assisted me with this grievance problem no one would even look if they had of looked, I could have been helped before March 7, 2022.  I was not believed that anything was wrong with me, that's why no one look to see if anything was wrong with me until it was to[o] late.  Onely HCU hospital also felled to respond to my medical condition when they reviewed that my toes had turn black (gangrene) and sent me back to the prison after 9 hour wait with no help or assistance (nothing).  Lawrence C.C. HCU should of seen this problem months and week before Onley or Carl HCU (hospital).

(Doc. 54-2 at 4).

In the grievance office response to the alleged February 14, 2022, grievance, the grievance officer indicated that despite the date Plaintiff put on the grievance, the prison did not receive it until March 31, 2022, and the CAO deemed it an emergency on April 1,

2022. (Doc. 54-2 at 1). The grievance was assigned number 03-22-365. In a grievance office response dated April 13, 2022, the grievance officer reported:

> D.O.N.'s response: On 1/28/22 sent to ER per Dr. Babich after telemed appointment. On 2/6/22 sent to ER by Dr. Meyers. On 2/9/22 went on a med writ and seen Dr. Beaman at Carle Heart. On 2/18/22 went on a med writ and was seen by Carle vascular department. On 3/1/22 sent to ER. The above information was taken from individuals chart.

(Doc. 54-2 at 2). The grievance officer concluded that Plaintiff continued to be seen and that outside referrals and/or treatment decisions were outside the purview of the grievance office. (*Id.*). The Warden concurred, and Plaintiff appealed with the appeal arriving at the ARB on May 2, 2022. The grievance was denied as appropriately addressed at the prison. (Doc. 54-2 at 1).

In a grievance dated March 7, 2022, Plaintiff alleged that at the time of writing he had filed numerous sick call slips about the serious condition of his left leg, foot, and toes. (Doc. 54-1 at 43). He alleged he had suffered months of unending pain because medical staff refused to acknowledge that he was in serious pain. He claimed he filed a grievance on or about October of 2021, but nothing ever came of it. (Doc. 54-1 at 44). Plaintiff alleged he went to sick call 4 to 5 times a week, and complained to anyone who would listen including officers, nurses, nurse practitioner Luking, Dr. Savino, and many more. Plaintiff also states he came to learn on March 3, 2022, that his pain and suffering was caused by a gangrene infection. (*Id.* at 44). The grievance was assigned number 3-22-222. Plaintiff submitted it as an emergency, but the Warden denied it emergency status on March 21, 2022.

On April 23, 2022, the grievance officer indicated that the grievance was a duplicate of grievance 03-22-365—the grievance dated February 14, 2022 but received some time later by the prison. The grievance officer also indicated the "incident date of October 2021" was outside the DR 504 timeframe. The officer further indicated "copy of grievance 03-22-222 obtained from master file as original unable to locate for review." The grievance was denied, the CAO concurred on August 28, 2022, and the appeal was received on September 13, 2022. (Doc. 54-1 at 42). The ARB rejected the grievance as duplicative of 03-22-365. (Doc. 54-1 at 41).

In a grievance allegedly drafted March 15, 2022, Plaintiff stated,

> On or about January 28, 2022, I was in so much pain coming from my toe & foot and left leg that I was rushed to Richland Memorial Hospital. Upon arriving, I was given an IV and ultrasound and placed in the (ER) waiting room after waiting 9 hours of suffering from infection believed to be (gangrene) an older John Doe came into the room and looked at my infection and the color of my toes & bottom foot (black) and my swollen leg that was so big that even a layman could tell & see that was a medical condition that needed medical treatment. Dr. John Doe instead of treating me or referring to some one, Dr. John Doe told Officer Fitch and Officer T. Stankey that there was nothing he could do for and that they could take me back to the prison being delayed in medical treatment with no treatment at all I lost all 5 of my toe & part of my foot 30 days later. (See) exhibit B-1 for doctor name…

(Doc. 51-1 at 85-86). Plaintiff goes on to alleged on February 9, 2022, he was referred back to a female Jane Doe doctor who reviewed his condition that had become worse, but she refused any care. (Doc. 51-1 at 86). Plaintiff alleges he saw two more doctors, including a Dr. Beeman who became angry and refused assistance. He adds that in February of 2022, he asked C/O Martin and Sgt. Yarnell for care for his foot, but both denied despite

being aware of his condition. He also states that he asked RN Welty about his condition, and she simply indicated there was nothing that she could do. (Doc. 41-1 at 86).

The IDOC Defendants (Riggs, Martin, and Yarnell) submitted a prison grievance log for Plaintiff's grievance activity. (Doc. 57-3). The log reflected that just one grievance was received in 2021 about an incident of excessive force. (Doc. 57-3 at 1). The log noted receipt of grievance 03-22-222 on March 21, 2022, which was deemed a non-emergency on March 22, 2022, and was received back for normal processing on March 31, 2022. It notes grievance 03-22-365 was received March 31, 2022, and was deemed an emergency, and was received in the grievance office for processing on April 1, 2022. (Doc. 57-3 at 1). The log does not reflect a grievance allegedly submitted in October of 2021 or on March 15, 2022.

The IDOC Defendants also submitted a cumulative counseling summary that begins in August of 2021. The log does not indicate any grievances submitted in October of 2021, nor does it reflect any queries about grievances. For example, on December 2, 2021, a counselor indicated that they spoke to Plaintiff on the wing during a face-to-face visit and he reported he was "good, no issues/concerns at this time." (Doc. 57-4 at 8). No issues were reported during another face-to-face visit on March 18, 2022. (*Id.* at 7).

In support of a response to summary judgment (Doc. 60), Plaintiff enclosed a copy of grievance 03-22-222 with a post-it note addressed to him indicating "I am not sure why I have this as it has been answered so I am returning it to you." (Doc. 60 at 12). Plaintiff noted on the post-it note that it was delivered to him on February 6, 2023.

## CONCLUSIONS OF LAW

### A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code.  20 ILL. ADMIN. CODE § 504.800, et seq. (2017).  Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility.  If an inmate is unsatisfied with the outcome at the facility he must appeal to the ARB within 30 days.  20 ILL. ADMIN. CODE § 504.850(a).

B. Analysis

The operative grievances identified in the fact section are relevant to all defendants.  The Court will address each motion for summary judgment individually.

**A. The outside providers—Drs. Marsi, Lewandowski, and Beeman.  (Doc. 53)**

Defendants Marsi, Lewandowski and Beeman all contend that Plaintiff does not have a fully exhausted grievance sufficient to exhaust the claims against them.  (Docs. 53, 54).  Of particular significance, they home in on grievance number 03-22-365, the grievance that Plaintiff dated February 14, 2022, but that the Warden apparently deemed an emergency on April 1, 2022.  They contend that this grievance is fraught with issues because it was "backdated," and it does not clearly identify them or their conduct.  Plaintiff counters that they have tried to obscure the record in this case by "getting rid of" grievances with their names. (Doc. 65 at 3). He specifically points to the October 2021 and March 15, 2022, grievances that he alleges he submitted but that were never returned by the facility.  He also argues counsel has tried to mislead the Court with the backdating argument about the February 14, 2022, grievance and that they have further tried to

confuse the Court by talking about many more recent grievances that are not relevant to the claims in this case.

The backdating argument is correct in the sense that Plaintiff must have submitted grievance 03-22-365 some time later than February 14, 2022, because in the body text of the grievance, Plaintiff talks about surgery scheduled for March 18, 2022, and he also talks about things that happened up through March 7, 2022. (Doc. 54-2 at 3-4). He specifically states that on March 7, 2022, he was told all 5 of his toes on his left foot had to be removed. (Doc. 54-2 at 4). It would have been impossible for Plaintiff to have this information February 14, 2022, because March 7, 2022, had not yet come and gone. However, beyond the fact that the February 14, 2022, is plainly incorrect, the doctors have not established why the alleged "backdating" actually matters.

They suggest that Plaintiff backdated his grievance to avoid any problems with the Illinois Administrative Code, which requires that a grievance be filed within 60 days of an incident, but it is not apparent that this is really a problem. In the complaint, Plaintiff alleges that he interacted with Marsi on January 28, 2022, Lewandowski on February 6, 2022, and Beeman on February 9, 2022. A grievance filed by the end of March of 2022 would still be within 60 days. Additionally, when the grievance office received this grievance for emergency processing on April 1, 2022, they did not reject it as referring to issues outside the scope of the 60-day timeframe, and neither did the ARB on appeal. Given that the grievance was not treated as untimely at any level of the grievance process, the backdating argument is a non-starter.

The defendants also argue that the grievance did not sufficiently identify issues with the care they provided because they interpret Plaintiff's main focus of the grievance as a February 14, 2022, appointment at a Champaign hospital, when they all interacted with him prior to that date. Plaintiff actually agrees in his response to summary judgment that "the Feb. 14, 2022 came from me seeing the last Dr. on February 14, 2022 before (amputation)." (Doc. 65 at 4). Instead, Plaintiff points to the March 15, 2022, grievance that he alleges he tendered, but that was never returned. Thus, the parties seem to be in agreement that grievance 03-22-365 is not sufficient to exhaust them claims against Drs. Marsi, Lewandowski, and Beeman.

Turning to the March 15, 2022, grievance, Drs. Marsi, Lewandowski and Beeman argue that it cannot be a true and accurate copy and that it instead must have been created for purposes of this litigation. Plaintiff submitted a self-professed copy of the March 15, 2022, grievance with his complaint, and he also submitted an "affidavit" about the grievance at that time. In the affidavit, he stated that in grievance 03-22-222 he mentioned that he had not received his October 2021 or March 15, 2022, grievances back. Grievance 03-22-222 was dated by Plaintiff March 7, 2022, but was received and rejected emergency status by the CAO on March 21, 2022. (Doc. 54-1 at 43). The defendants argue that both the contents and timing of events prove impossibility. They contend grievance 03-22-222 does not mention the March 15, 2022, grievance, and they are correct. They also contend Plaintiff's documents cannot be true because there is no way a March 7, 2022, grievance—grievance 03-22-222—could have made mention of a later grievance from March 15, 2022, that allegedly went missing.

Ultimately, the Court cannot resolve the problems with the grievance Plaintiff alleges he submitted on March 15, 2022, because the parties are in direct opposition about the timing and contents of this alleged grievance. The Defendants contend that the grievance was manufactured solely for the purpose of litigation, and that Plaintiff should be punished for his attempt to deceive the Court with the dismissal of this case. Such a sanction is a serious consequence, which the Court will consider if Defendants ultimately establish that the grievance was falsified.

### B. The Wexford providers—Fitzgerald, Frey, and Welty

As an initial matter, the Court notes that the Wexford Defendants argue in their reply brief (Doc. 62) that Plaintiff's response to summary judgment should be discounted because he did not follow the technical aspects of Rule 56 by filing a statement of material facts or support his assertions with citations to the record. As a pro se litigant, the Court will read Plaintiff's response broadly and will consider any record evidence that may support his position.

Like Drs. Marsi, Lewandowski and Beeman, the Wexford defendants also argue that Plaintiff's alleged October 2021 and March 15, 2022, grievances were falsified for litigation purposes and are not sufficient to exhaust the claims against them. They point to statements and dates in the grievances that they contend are evidence the grievances could not have been penned and submitted on the dates Plaintiff included. As to the October 31, 2021, grievance which mentions Defendants Fitzgerald and Frey—it contains references to things that occurred in November and December of 2021, as well as in February of 2022. The Defendants argue that these dates clearly demonstrate the

document could not have been prepared and submitted in October of 2021. They also argue that the March 15, 2022, grievance, which mentions Welty, cannot be viewed as written and submitted when dated because it contains citations to exhibits to the complaint, which was submitted in September of 2023.

For his part, Plaintiff argues that the Defendants are simply trying to create confusion and to absolve themselves, and that the only way they could do that is by getting rid of grievances with names and dates relevant to the claims against them. (Doc. 60). Plaintiff points to a copy of grievance 03-22-222, which was dated March 7, 2022, as proof that there were problems with grievances getting lost at the prison because at the time the grievance officer reviewed it they apparently could not find the original, and the original was later returned to him with a sticky note in February of 2023. (Doc. 60 at 9). This argument is unpersuasive because the grievance officer indicated they were able to retrieve a copy of the grievance from his master file, suggesting the process had redundancies and was *not* susceptible to unavailability caused by a misplaced document. He also argues that because there is mention of an October 2021 grievance within grievance 03-22-222, it proves that the October grievance may also have been lost for some time or is still being held by the prison's grievance office. (Doc. 60 at 8-9). This argument is also a non-starter. Plaintiff made reference to something lost in October of 2021, but the grievance officer's only comment about that was that an incident that occurred in October of 2021 but was not grieved until March of 2022 would be untimely. This does not prove the existence of a different lost grievance.

As with the disputes between the doctors and Plaintiff about the alleged March 15, 2022, grievance, the Court cannot resolve the issues about existence or veracity of the alleged October 2021 grievance or the March 15, 2022, grievance as they pertain to Defendants Fitzgerald, Frey, or Welty. These Defendants also seek dismissal of the case as a sanction for false grievance documentation, which the Court cannot assess without resolving the disputes about these documents.

### C. The IDOC staff—Martin and Yarnell (Docs. 56, 57)

Defendants Martin and Yarnell take a more direct tactic, simply arguing that there are no grievances that were received and processed at the prison that mentioned their conduct. (Docs. 56, 57). They do not acknowledge the alleged March 15, 2022, grievance that mentions each of them by name and discusses the instances when Plaintiff alleges they denied him care. (Doc. 1 at 26-27). In response, Plaintiff discusses grievances against Defendant Riggs, which are not relevant because Riggs does not seek dismissal on exhaustion grounds. (Doc. 64). As to Yarnell and Martin, he plainly says he filed grievances with his complaint, and he does not know how to "defend himself" against missing or lost grievances. (Doc. 64 at 2).

The issue for Martin and Yarnell is the same as for the rest of the Defendants—it turns on the existence and veracity of the alleged March 15, 2022, grievance. Defendants Martin and Yarnell did not mention this grievance, though they submitted other comprehensive evidence that weighs against a finding that this grievance existed. Specifically, they submitted a prison grievance log, and a cumulative counseling

summary. The Court is familiar with documents of this nature from hearings on the exhaustion of administrative remedies in other matters, and generally understands that documents of this nature can be used to discuss the possibility that grievances were filed and went missing. Given that Martin and Yarnell submitted this evidence, which is often very important to provide context when an individual argues that grievances are missing, the Court finds that they submitted at least enough information to create a genuine dispute about exhaustion of the claims against them.

In sum, the Court finds that the issue of exhaustion in this case turns entirely on the possibility that Plaintiff prepared and attempted to submit grievances on October 31, 2021, and March 15, 2022, as he purports to have attached to his complaint. (Doc. 1 at 24-27; Doc. 1 at 86 (Plaintiff's affidavit about the October and March 15 grievances). Particularly because the majority of the Defendants assert that these documents were falsified for litigation purposes, the Court finds it appropriate to immediately set this matter for a Pavey hearing.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has renewed his earlier Motion for Recruitment of Counsel (Doc. 59) In the original Motion (Doc. 3), he indicated he had only some grade school education, and he attached proof of his efforts to secure his own counsel. In his latest Motion (Doc. 59), he checked a box indicating he had some high school education but provided no other new information. There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a

reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff has supplied proof of his efforts to recruit counsel. However, the Court does not find the matter too complex at this juncture for Plaintiff to proceed on his own. At this point, Plaintiff will be required to represent himself at a hearing limited to the issue of his exhaustion of administrative remedies. The most important task will be presenting evidence or testimony about his efforts to use the grievance process for two grievances he alleged he submitted in relation to this lawsuit. This is a relatively simple task and will be based largely on Plaintiff's personal knowledge. Therefore, the Court does not find that the case currently exceeds Plaintiff's ability to competently represent himself, and his Motion (Doc. 59) is **DENIED**.

### DISPOSITION

Plaintiff's Second Motion for Recruitment of Counsel (Doc. 59) is **DENIED**.

Defendants' Motions for Summary Judgment on the issue of exhaustion (Docs. 50, 53, 56) are **DENIED,** and this matter will be scheduled for a hearing by separate order. <u>The hearing will be limited to evidence and testimony about the alleged October 31, 2021 (Doc. 1 at 24-25), and March 15, 2022 (Doc. 1 at 26-27), grievances, and Plaintiff's supporting affidavit (Doc. 1 at 86) about these grievances</u>. If any defendant does *NOT* want to participate in a hearing and would prefer to withdraw the affirmative defense of failure to exhaust administrative remedies, they may do so by filing an appropriate motion within 14 days of this Order.

As mentioned earlier in this Order, Defendants Riggs, Yoko Savino and Carissa Luking did not seek summary judgment on the issue of exhaustion, so they are not expected to participate in a hearing, and the claims against them will not be dismissed. Merits discovery shall remain stayed as to these three individuals.

**IT IS SO ORDERED.**

Dated: November 20, 2024

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge