IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNY L. WILSON, A82195, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CARISSA LUKING, | ) |
| YOKO SAVINO, | ) Case No. 23-cv-3186-DWD |
| AUDRY FITZGERALD, | ) |
| TAMMY WELTY, | ) |
| JACKSON MARTIN, | ) |
| AMY FREY, | ) |
| PATRICK A. RIGGS, | ) |
| DONALD YARNELL, | ) |
| DR. ZIAD MARSI, | ) |
| DR. ALYSSA SUZANNE | ) |
| LEWANDOWSKI, and | ) |
| DR. BRIAN BEEMAN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court on Defendants' ("Defendants") affirmative defense that Plaintiff Johhny Wilson failed to exhaust his administrative remedies prior to filing this lawsuit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). The Court held a *Pavey* hearing on February 6, 2025, to make findings about exhaustion in this case. See *Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing from the parties and reviewing the evidence on exhaustion, the Court finds that the Plaintiff failed to exhaust his administrative remedies

against Defendants Fitzgerald, Welty, Martin, Frey, Yarnell, Marsi, Lewandowski, and Beeman.

## BACKGROUND

Plaintiff signed his original complaint on May 23, 2023, (Doc. 1 at 80), however it was not transmitted to the Court via electronic scan until September 17, 2023, and it was docketed on September 21, 2023. (Doc. 1 at 1; Docket entry 1). Upon initial review of the complaint, Plaintiff was allowed to proceed on the following claims:

Claim 1: Eighth Amendment deliberate indifference claim against the medical providers (Carissa Luking, Yoko Savino, A. Fitzgerald, LPN Welty, RN Frey) who injured Plaintiff's foot or refused to provide any care for his infection from August of 2021 through March of 2022;

Claim 2: Eighth Amendment deliberate indifference claim against the non-medical prison staff (J. Martin, Patrick Riggs, and D. Yarnell) for their involvement in denying care for Plaintiff's ongoing infection from September of 2021 through March of 2022;

Claim 3: Eighth Amendment deliberate indifference claim against the medical providers (Alyssa Suzanne Lewandowski, Dr. Ziad Marsi, and Dr. Brian Beeman) at Carle Memorial Hospital and Carle Vascular Center for failing to treat Plaintiff's infection.

(Doc. 11 at 5-6, 10). Other claims against additional defendants were dismissed as insufficiently pled. (*Id.* at 10-11).

There are three primary groups of defendants—those employed by Wexford Health Sources, Inc. (Luking, Savino, Fitzgerald, Welty and Frey); those employed by the IDOC (Martin, Yarnell, and Riggs); and those employed at outside medical facilities (Lewandowski, Marsi, and Beeman).

The Court reviewed the written briefs on summary judgment and narrowed the issue for the hearing to a grievance Plaintiff alleged that he filed on October 30, 2021, and a grievance he alleged that he filed on March 15, 2022. (Doc. 66). These two grievances encompass exhaustion against Defendants Fitzgerald, Welty, Frey, Martin, Yarnell, Lewandowski, Marsi, and Beeman. The Court scheduled the matter for a *Pavey* evidentiary hearing to develop the record surrounding these two alleged grievances, which Plaintiff had submitted as exhibits to his complaint, but which the Defendants found no official record of at the prison.

The October 2021 grievance can be summarized as follows: Plaintiff claimed in the grievance his foot problems began on August 4, 2021, that he got medication from Defendant Fitzgerald on September 15, 2021, and that his pain did not start until about October 30, 2021. (Doc. 1 at 24-25). He goes on to complain about November and December of 2021 attempts to seek care, including at least one from Defendant Frey. He also mentioned asking a nurse for assistance on February 8 during medication rounds. (Doc. 1 at 25). On the front page of the grievance Plaintiff wrote, "This is a print before I wrote the original copy so no errors or mistakes would be made and to know what I wanted to write." (Doc. 1 at 25).

The March 15, 2022, grievance can be summarized as follows: Plaintiff alleged that in late January of 2022 he was rushed to the hospital to be seen concerning severe pain in his foot. (Doc. 1 at 26). He alleges the "Dr. John Doe" said there was nothing he could do, and directed he be returned to the prison. (Doc. 1 at 27). He noted below the paragraph describing this hospital visit, "See exhibit R-1 for doctor name." (Doc. 1 at 27).

He explained on February 9, 2022, he saw a female Jane Doe doctor who refused assistance. (Doc. 1 at 27). He again noted, "see R-2 for doctor name." (Doc. 1 at 27). He alleged he also saw Dr. Beeman, who became angry and told officers to remove him. (Doc. 1 at 27). He also discussed asking Defendants Martin, Yarnell, and Welty for assistance. (Doc. 1 at 27). The first page of this grievance contained the same notation that it was drafted before Plaintiff drafted his "original" so that no errors would be made. (Doc. 1 at 26).

## FINDINGS OF FACT

At the evidentiary hearing, the Defendants presented a correctional counselor, Garrett, to testify about the grievance process at Lawrence Correctional Center. Garrett testified that an inmate files a grievance in a locked box, and the grievances are regularly retrieved and routed to the grievance office for processing. An employee reviews the grievances and notes the receipt of each grievance in the "CHAMPS" counseling summary. This process also generates a receipt that is sent to the individual in custody. Grievances are also recorded in an electronic log, such that if a grievance is lost there will still be a record of it.

Specific to Plaintiff's case, Garrett viewed the electronic log (Doc. 57-3 at 1; IDOC Document No. 133) and the CHAMP summary (Doc. 57-4 at 7-8; IDOC Document No. 145-146) during the hearing. Garrett testified that neither document reflected that Plaintiff had submitted a grievance in October of 2021, or on March 15, 2022.

The Defendants also elicited testimony from Plaintiff about the October 2021 and March 15, 2022, grievances.  Plaintiff testified that he was familiar with the grievance process at Lawrence.  As to the October grievance, Plaintiff testified that he signed the grievance on October 30, 2021, but that he penned it at some later date.  He explained that he did this because he believed he had 60 days from an incident to file a grievance, and so he believed it appropriate to date the grievance October 30, 2021, but to not actually submit it until some time later.  Plaintiff stated that he did not know exactly when he filed the grievance but that it would have been in November or December of 2021.  When asked why the grievance also discussed a February 8 date, Plaintiff said it was a mistake and should have been part of a different grievance.  Plaintiff was also asked about an affidavit he submitted in support of his complaint in this case, wherein he agreed that he stated he filed the October 2021 grievance in October of 2021.  (Doc. 1 at 86).

As for the March 15, 2022, grievance, Plaintiff admitted that the exhibits he cited in the grievance ("R-1" and "R-2") referred to exhibits that he filed with the complaint in this case.  He agreed he submitted the complaint in September of 2023.  Plaintiff was unable to explain when he obtained the records referenced as R-1 and R-2 in relation to the timing of the grievance or the complaint.  He stated he believed he had gotten those records from counsel, though he did not explain when that occurred.  He was asked if he had submitted the exhibits with the grievance itself, but he said he did not.

Plaintiff also testified that he had foot surgery to amputate his toes on March 7, 2022.  He testified that he signed and dated a grievance for March 7, 2022, (Doc. 54-1 at

43), but that the grievance necessarily must have been prepared on a later date because he could not have prepared it the same day he had an operation.

Plaintiff testified briefly on his own behalf. He argued that his alleged March 7, 2022, grievance was evidence of problems with the grievance process because in it he had mentioned an October 2021 grievance. (Doc. 54-1 at 43-44). The substantive response to that grievance indicated an event in October of 2021 was out of the timeframe to be grieved. (Doc. 54-1 at 42). He argued in testimony that the officer could not have discussed the October 2021 grievance without having a copy to review. He also argued that the grievance was proof of things getting lost in the grievance system because a copy of it was returned to him nearly a year later with a notation it had been lost.[1] (Doc. 1 at 10).

## CONCLUSIONS OF LAW

### A. Legal Standards

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). "At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility. After finding

---

[1] This argument is misleading. The March 7, 2022, grievance was *not* truly lost at the prison for a year. It received a counselor's response on April 7, 2022, (Doc. 1 at 12), it received a grievance officer response on August 23, 2022, (Doc. 1 at 14), and it was returned by the Administrative Review Board on September 13, 2022 (Doc. 1 at 15). Even if Plaintiff for some reason got his original back in February of 2023, the grievance was fully processed by the prison prior to that occurring.

facts, the district court may allow a claim to proceed or dismiss it for failure to exhaust." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (internal citations omitted).

For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. If an inmate is unsatisfied with the outcome at the facility he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

Whether a claim has been exhausted pursuant to § 1997e(a) is a determination for a judge—not a jury—to make. *Pavey v. Conley*, 544 F.3d 739, 741-42 (7th Cir. 2008). If a *Pavey* hearing is held due to an issue of fact about exhaustion of administrative remedies, the court hears evidence, finds facts, and determines credibility. *Wilborn v. Ealey*, 881 F.3d

998, 1004 (7th Cir. 2018). The burden of proof is on the defendants to demonstrate that the prisoner failed to exhaust available administrative remedies. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Generally, a defendant will need to do more to carry the burden than plainly allege that no grievance exists, a defendant might meet said burden by submitting additional evidence such as grievance logs, counseling summaries, or evidence about the routine function of the grievance procedure. *See e.g.*, *Daniels v. Prentice*, 741 Fed. App'x 342, 343-44 (7th Cir. 2018) (not published in the Federal Reporter) (finding that a defendant met her burden to show a lack of exhaustion by submitting records of an inmate's grievance activity, the inmate's counseling record, and affidavits on the prison grievance procedure to contradict the plaintiff's own testimony about grievances that allegedly went missing).

   B. **Analysis**

   The Court held a *Pavey* hearing in this matter to find facts and to review the credibility of the witnesses. The Defendants credibly established, via the testimony of counselor Garrett, that Lawrence has a functional grievance process with multiple mechanisms to track and receipt grievances. Routine documents to track grievances include the cumulative counseling summary (CHAMP notes) and an electronic log. Garrett reviewed both of these documents and found no notations indicating that Plaintiff had filed grievances on October 30, 2021, or March 15, 2022. Plaintiff also testified at the hearing that he was familiar with the grievance process at Lawrence, and exhibits considered in the Court's previous Order (Doc. 66) on the exhaustion of administrative remedies demonstrate that Plaintiff successfully used the process to fully

exhaust other grievances. Against this backdrop, the Court finds that the Defendants met their burden via documentary and testimonial evidence that a grievance process existed and was available to Plaintiff.

As for Plaintiff's own testimony about the existence of the October 30, 2021, grievance and the March 15, 2022, grievance, Plaintiff was unable to provide a compelling narrative about these grievances at the hearing. He first attempted to justify the inclusion of November and December 2021 events in his October 30, 2021, grievance by arguing he had 60 days to file the grievance and thus the events had happened before he actually filed the grievance. However, when confronted with the inclusion of a February 8 date in the grievance, he was unable to explain how he would have been able to also include that information in a document that was purportedly filed by the latest in December of 2021. He claimed a mistake but was unable to explain it. He also did not satisfactorily explain why he believed it was appropriate to place his dated signature on documents as October 30, 2021, despite knowing that was not the date of filing. Nor was he able to explain why in his affidavit (signed under the penalty of perjury) he claimed that he submitted the grievance in October of 2021, when in fact he had submitted it at some later date. As for the March 15, 2022, grievance, Plaintiff was unable to explain how he could have discussed exhibits in March of 2022 as R-1 and R-2 that were not "labeled" R-1 and R-2 until they were filed with a complaint drafted and filed between May of 2023 and September of 2023. He testified that he submitted the exhibits with the complaint, *not* with the March 15, 2022, grievance.

On the whole, Plaintiff's testimony lacked credibility about when the October 30, 2021, and March 15, 2022, grievances were drafted, and when they may have been submitted to the prison grievance officials. Even if the documents were drafted on dates later than the signature dates, they include discussions of topics that came much later than 60 days after the dates they were signed. The October 30, 2021, grievance was allegedly filed in December of 2021, but contained reference to a February 8 occurrence. The March 15, 2022, grievance contained reference to an exhibit to the complaint in this case prepared between May and September of 2023. These internal references defeat the notion that Plaintiff wrote either of these grievances as a "print before [he] wrote the original copy so no error or mistakes would be made." (Doc. 1 at 24, 26). They also destroy the plausibility of any assertion that Plaintiff drafted the grievances on October 30, 2021, and March 15, 2022, and submitted them to the prison grievance at some point within 60 days of those dates.

The Court knows from the underlying grievance record considered prior to the hearing that Plaintiff was able to draft and successfully exhaust a few grievances about the injuries that gave rise to this lawsuit. (Doc. 66). This makes it seem like when Plaintiff eventually opted to file a lawsuit, he became concerned about his use of the exhaustion process, and fabricated documents to fill in gaps where he believed he may not have satisfactorily exhausted claims against specific parties. Although Plaintiff's injuries (the loss of all five toes on one foot) are serious and regrettable, the extent of his harm does not excuse the fabrication of documents for litigation purposes. Defendants Fitzgerald, Welty, Frey, Beeman, Lewandowski, and Marsi, have requested that the Court dismiss

the claims against them with prejudice as a consequence for the falsification of the grievance documents. (Docs. 51 at 11-12; 54 at 11-12).

Normally a claim dismissed for an individual's failure to exhaust administrative remedies is dismissed without prejudice. However, the Seventh Circuit has agreed in recent years that a claim or case may be dismissed with prejudice as a sanction if a litigant engages in fraudulent conduct or perjury. *See, Fulks v. Watson*, 88 F.4th 1202, 1209 (7th Cir. 2023) (affirming the dismissal of an entire action for fraud and perjury where an inmate falsified a notation on a grievance document); *Martin v. Redden*, 34 F.4th 564, 568-69 (7th Cir. 2022) (affirming the dismissal of cases and the imposition of a two-year filing ban for an inmate who submitted fraudulent and forged grievance documents). Not only did Plaintiff falsify the October 30, 2021, and March 15, 2022, grievance documents, but he doubled down on his falsifications via his sworn affidavit (Doc. 1 at 86) and his testimony at the hearing. The Court does not take falsifications of this nature lightly, and it agrees with the Defendants that an appropriate sanction is the dismissal of the claims against them with prejudice for the falsifications. *See, Jackson v. Murphy*, 468 Fed. App'x 616, 620 (7th Cir. 2012) (finding that the dismissal of *all* claims in an inmate filed case was an appropriate sanction where the inmate forged a grievance document and perjured himself).

The severity of a sanction should be proportional to the gravity of the offense, *Williams v. Adams*, 660 F.3d 263, 265–66 (7th Cir.2011); *Allen v. Chi. Transit Auth.*, 317 F.3d 696, 703 (7th Cir.2003), and before it sanctions a litigant under its inherent power a court must find that the party "willfully abused the judicial process or otherwise conducted

litigation in bad faith." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir.2009); *see Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 928 (7th Cir.2004). Here, the Court finds that Plaintiff's conduct was willful, because he purposefully drafted the grievances and affidavit and submitted them with his complaint, and then continued to maintain they were legitimate documents with no plausible explanation for the anomalies contained in the documents. When confronted about oddities in the documents at the hearing, Plaintiff simply had no explanation and claimed "mistake" or confusion with no reasonable support.

The sanction of dismissal of some claims with prejudice is narrowly tailored because it does not impact Plaintiff's ability to pursue his claims against Defendants Riggs, Savino, and Luking, who did not move for summary judgment on the issue of exhaustion. The Court also finds this to be an appropriately limited sanction because as Plaintiff stated at the hearing, he is a novice to litigation. This sanction clearly communicates that Plaintiff must not falsify documents later in this litigation or in any other case he may file in the future. Plaintiff should also reconsider his approach to dating his signature on documents for litigation or that might be used in litigation. He should sign and date a document on the actual date that he submits the document, and not on any earlier date when he may be working on preparing the document. This will help him to keep clearer records and to be more accurate. The Court also considered the alternative of a monetary sanction but given that Plaintiff is proceeding IFP in this case, and has very limited financial resources, a financial sanction might be more harsh than necessary and would not necessarily deter future conduct. Thus, the Court will dismiss

Plaintiff's claims against Fitzgerald, Welty, Frey, Beeman, Lewandowski, Marsi, Yarnell, and Martin with prejudice as a sanction for his falsified documents, but it will not impose any other sanctions.

### DISPOSITION

Plaintiff has failed to exhaust his administrative remedies against Defendants Fitzgerald, Welty, Frey, Beeman, Lewandowski, Marsi, Martin, and Yarnell, and these claims are now **DISMISSED** with **PREJUDICE** as a sanction for the falsification of grievance documents submitted with the complaint (Doc. 1 at 24-27). This disposition entirely eliminates **Claim 3**, which only named Defendants Beeman, Lewandowski, and Marsi. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Fitzgerald, Welty, Frey, Lewandowski, Marsi, Beeman, Yarnell, and Martin, and to enter judgment in their favor at the close of the case.

The case may now proceed to merits discovery on the following claims:

Claim 1: Eighth Amendment deliberate indifference claim against Defendants Luking and Savino who injured Plaintiff's foot or refused to provide care from August of 2021 through March of 2022;

Claim 2: Eighth Amendment deliberate indifference claim against Defendant Riggs for his involvement in denying care for Plaintiff's ongoing infection from September of 2021 through March of 2022.

**IT IS SO ORDERED.**

Dated: February 17, 2025

/s *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge